IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL INTERSTATE INSURANCE COMPANY, an Ohio corporation,<br><br>        Plaintiff,<br>v.<br><br>DAVID ARCE as representative of the Estate of BETTY JEAN DEGROOT, *Deceased*, FEDERATED LOGISTICS, LLC, LEAR CORPORATION, HALLMARK SPECIALTY INSURANCE COMPANY, and VICTOR VILLEGAS-MARQUEZ,<br><br>        Defendants. | Case No.:<br><br>**JURY DEMANDED** |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, NATIONAL INTERSTATE INSURANCE COMPANY ("NATIONAL INTERSTATE"), by and through its attorneys, ORLEANS, CANTY, NOVY, LLC, and as for its Complaint for Declaratory Judgment, states as follows:

**PARTIES**

1. NATIONAL INTERSTATE is an insurance company with its principal place of business located in Richfield, Ohio and is a citizen of the State of Ohio.

2. At all times relevant, upon information and belief, FEDERATED LOGISTICS, LLC ("FEDERATED"), was a Michigan Corporation with its principal place of business in Michigan, and is therefore a citizen of the State of Michigan.

3. At all times relevant, upon information and belief, LEAR COPORATION ("LEAR"), was a Delaware Corporation with its principal place of business in Michigan, and therefore LEAR is a citizen of the States of Delaware and Michigan.

4. At all times relevant, upon information and belief, HALLMARK SPECIALTY INSURANCE COMPANY ("HALLMARK"), is an Oklahoma Company with its principal place of business in Texas and is therefore a citizen of the States of Texas and Oklahoma.

5. At all times relevant, upon information and belief, VICTOR VILLEGAS-MARQUEZ ("MARQUEZ"), was a resident of Illinois and was therefore a citizen of the State of Illinois.

6. At all times relevant, upon information and belief, PETER R. NICKCEVICH ("NICKCEVICH"), was a resident of Illinois and was therefore a citizen of the State of Illinois.

7. At all times relevant, upon information and belief, DAVID ARCE ("ARCE"), as representative of the ESTATE OF BETTY JEAN DEGROOT, deceased, was a resident of Illinois and was therefore a citizen of the State of Illinois.

8. Each of the above-named parties are necessary and interested parties to this coverage dispute and controversy.

## JURISDICTION AND VENUE

9. 28 U.S.C. § 1332 provides that:

   (a) The District Court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between

   (1) citizens of different states;

   (2) citizens of a State and citizens or subjects of a foreign state . . .

10. Diversity of citizenship exists between the Plaintiff and each of the Defendants because Plaintiff, NATIONAL INTERSTATE, is a citizen of the state of Ohio and none of the Defendants are citizens of the State of Ohio.

11. Additionally, the jurisdictional threshold is met because the NATIONAL INTERSTATE insurance proceeds at issue in this coverage action are $1,000,000.00 per incident and the underlying accident giving rise to this coverage controversy involves a claim for wrongful death and a separate claim for severe bodily injuries.

12. Based upon the catastrophic nature of the underlying motor vehicle accident and the NATIONAL INTERSTATE insurance proceeds, Plaintiff reasonably believes, based on the damages alleged and policy limits at issue, that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, which therefore gives rise to an insurance coverage controversy in excess of the jurisdictional limit.

13. 28 U.S. Code § 1391 provides in part:

(b) Venue in General. - A civil action may be brought in: (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred are a substantial part of property that is the subject of the action is situation…

14. The underlying motor vehicle accident that gives rise to this coverage controversy occurred in Cook County, Illinois, within this judicial district and therefore, venue in appropriate in this district.

## UNDERLYING COMPLAINTS

15. On October 28, 2021, DAVID ARCE, as representative of the ESTATE OF BETTY JEAN DEGROOT, Deceased, filed a Complaint at Law in the Circuit Court of Cook County, Illinois, Law Division, under case number 2021 L 010548 ("THE DEGROOT LAWSUIT"), promised in the wrongful death of BETTY JEAN DEGROOT as a passenger in a vehicle driven by NICKCEVICH. A true and correct copy of THE DEGROOT LAWSUIT is attached hereto as Exhibit A.

16. In pertinent part, in Count I of THE DEGROOT LAWSUIT, it is alleged that VICTOR VILLEGAS-MARQUEZ ("MARQUEZ") was the driver of a tractor owned by FEDERATED hauling a trailer owned by LEAR.

17. It is further alleged in THE DEGROOT LAWSUIT that MARQUEZ was negligent in the operation of the tractor-trailer and further charges FEDERATED with vicarious liability for the negligence of MARQUEZ in causing the motor vehicle incident.

18. Additionally, in Count II of THE DEGROOT LAWSUIT, in pertinent part, it is alleged that LEAR owned the trailer and that MARQUEZ was also acting as an agent of LEAR at the time of the motor vehicle incident, making LEAR vicariously liable for the conduct of MARQUEZ as well.

19. Accordingly, THE DEGROOT LAWSUIT seeks damages for the wrongful death of BETTY JEAN DEGROOT against MARQUEZ and FEDERATED as well as against LEAR for its vicarious liability and independent acts of negligence.

20. On May 6, 2022, PETER NICKCEVICH ("NICKCEVICH") filed a Complaint at Law in the Circuit Court of Cook County, Illinois, Law Division, against FEDERATED, MARQUEZ, and LEAR ("THE NICKCEVICH LAWSUIT") seeking damages for his personal injuries arising from the October 4, 2021 motor vehicle incident (a true and correct copy of THE NICKCEVICH LAWSUIT is attached hereto as Exhibit B).

21. THE NICKCEVICH LAWSUIT is premised and negligence against MARQUEZ and FEDERATED based upon agency theories.

22. Further, in pertinent part, Count III of THE NICKCEVICH LAWSUIT, premised in the direct negligence of LEAR for negligently hiring FEDERATED and for failing to comply with various Federal Motor Carrier Safety Regulations.

23. Additionally, THE NICKCEVICH LAWSUIT, alleges that LEAR negligently selected FEDERATED, did not monitor or supervise FEDERATED'S work properly, aided and abetted MARQUEZ' violations of the Federal Motor Carrier Safety Regulations, and otherwise violated the Federal Motor Carrier Safety Regulations, causing and contributing to the motor vehicle incident.

24. Further, Count IV of THE NICKCEVICH LAWSUIT alleges that MARQUEZ was subject to LEAR'S control and therefore LEAR is vicariously liable for MARQUEZ' conduct.

25. Accordingly, NICKCEVICH is seeking monetary damages for his injuries rising from the subject motor vehicle incident against MARQUEZ and FEDERATED, as well as separately against LEAR based upon its vicarious liability and independent acts of negligence.

## THE MOTOR CARRIER AGREEMENT AND TENDER OF DEFENSE

26. On April 1, 2020 Federated and Lear (through Lear's agent, Penske Logistics, LLC) entered into a Motor Carrier Agreement ("MCA") whereby Federated agreed to transport cargo provided by Lear and managed by Penske. The MCA was in effect at the time of the incident.

- Section 6 pertains to insurance, and provides, in pertinent part:

  …CARRIER shall maintain insurance of kinds and amounts specified in the following schedule…(3) Automobile Liability Insurance in which the limit of liability for injuries, including accidental death, shall be $1,000,000 for any one occurrence….

  All policies shall list SHIPPER and PENSKE as certificate holder and as an additional insured with waiver of subrogation…

- Sections 7 pertains to Indemnification, and provides, in pertinent part:

  CARRIER agrees to protect, indemnify, save and hold harmless, and defend SHIPPER…from and against any and all claims for loss, damage or injury, suits, actions, causes of action, legal proceedings, and other liabilities of every kind and nature ("Damages") brought against any such party, arising from or in connection with or cause in whole or in part by (1) the CARRIER's performance of Services under this Agreement….

27. Pursuant to the MCA, LEAR has tendered its defense and indemnification of THE DEGROOT LAWUIT and THE NICKCEVICH LAWSUIT to NATIONAL INTERSTATE, and NATIONAL INTERSTATE has agreed to defend LEAR against THE DEGROOT LAWSUIT and THE NICKCEVICH LAWSUIT subject to a full reservation of rights as set forth in reservations of rights correspondence issued on July 14, 2022 to LEAR (a true and correct copy of the July 14, 2022 reservation of rights correspondence is attached hereto as Exhibit C).

28. As set forth in the reservation of rights correspondence, Exhibit C, NATIONAL INTERSTATE alleges that to the extent liability is apportioned to LEAR for its independent acts or omissions of negligence as alleged in the underlying DEGROOT and/or NICKCEVICH LAWSUITS, NATIONAL INTERSTATE does not have a duty to indemnify LEAR for any degree of fault attributed to it. Further, NATIONAL INTERSTATE alleges, as set forth in its reservation of rights correspondence, attached as Exhibit C, that to the extent LEAR'S demand for coverage from NATIONAL INTERSTATE violates Michigan Statute 79.21 pertaining to motor carrier transportation contracts (Avoiding Provisions Affecting Motor Carrier Transportation Contracts that purport to indemnify a party for its own liability for damages). NATIONAL INTERSTATE does not have a duty to indemnify LEAR against THE DEGROOT LAWSUIT and/or THE NICKCEVICH LAWSUIT.

## THE INSURANCE POLICIES

29. National Interstate issued the Policy (Policy No. VOH 4900090 01) to Federated, effective 3/1/21 – 3/1/22 with a per accident limit of $1,000,000.00. The Policy provides, in pertinent part:

**MOTOR CARRIER COVERAGE FORM**

> […] Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance. […]

6

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols |
|---|---|
| **61** | Any "Auto" |

[…]

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto". […]

We will have the right and duty to defend any "insured" against a "suit" asking for such damages…. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage"…to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

[…]

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay

or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

[…]

**B. Exclusions**

This insurance does not apply to any of the following:

[…]

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

    **a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    **b.** That the "insured" would have in the absence of the contract or agreement.

[…]

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

[…]

**SECTION VI – DEFINITIONS**

[…]

    **H.** "Insured contract" means:

    […]

    5.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to

8

> a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

***

<b>BLANKET ADDITIONAL INSURED ENDORSEMENT</b>

This endorsement modifies insurance provided under the following:

MOTOR CARRIER COVERAGE FORM […]

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**Who Is An Insured** under **COVERED AUTOS LIABILITY COVERAGE** is amended to include as an "insured", any person or organization you are required to add as an additional insured on this policy under a written contract, agreement or permit which must be:

> a. currently in effect or becoming effective during the term of the policy; and
> b. executed prior to the "bodily injury" or "property damage."

The insurance provided to this additional insured is limited as follows:

1. That person or organization is an additional insured only with respect to liability arising out of your operations performed for that additional insured as specified in the written contract, agreement or permit.

2. The limits of insurance applicable to the additional insured are those in written contract, agreement, permit or in the Declarations for this policy, whichever are less. These limits of insurance are inclusive of and not in addition to the Limit of Insurance for Liability Coverage shown in the Declarations.

3. Coverage is not provided for "bodily injury" or "property damage" arising out of the sole negligence of the additional insured.

Any coverage provided hereunder will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary. When this insurance is in excess, we will have no duty to defend the additional insured against any "suit" if any other insurer has a duty to defend the additional insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the additional insurer's rights against all those other insurers.

All other terms and conditions of this policy remain unchanged.

30. HALLMARK issued a commercial access liability policy to FEDERATD under policy number 77HX20596 with effective dates of 12/15/20 to 3/1/22 with an occurrence limit of $2,000,000.00 (a true and correct copy of the HALLMARK access liability policy is attached hereto as Exhibit D).

31. FEDERATED is included in this lawsuit as a party Defendant as a necessary and interested party to the extent its excess liability policy limits may be implicated because of the underlying DEGROOT LAWSUIT and/or NICKCEVICH LAWSUIT.

32. On information and belief, HALLMARK'S excess policy includes the subject NATIONAL INTERSTATE policy issued to FEDERATED in its schedule of underlying insurance and accordingly, HALLMARK will be subject to the same rights and defenses to indemnity as asserted herein by NATIONAL INTERSTATE.

## DECLARATORY JUDGMENT

33. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §22.01, Plaintiff, NATIONAL INTERSTATE, is entitled to a judicial determination concerning the scope and nature of its rights and defenses to coverage under its policy issued to FEDERATED with regard to its duties to defend and indemnify LEAR. NATIONAL INTERSTATE is entitled to a declaration and judgment stating that, to the extent liability is apportioned to LEAR for its independent acts or omissions of negligence or through its alleged agency relationship with MARQUEZ in the underlying DEGROOT and/or NICKCEVICH LAWSUITS, that NATIONAL INTERSTATE does not have a duty to indemnify LEAR for any degree of fault attributed to it.

34. NATIONAL INTERSTATE is also entitled to a declaration and judgment stating that, according to Michigan Statute 79.21 pertaining to motor carrier transportation contracts, that

LEAR'S contractual claim for indemnification is void to the extent LEAR seeks indemnification for its own negligence, whether vicarious or through its independent acts.

WHEREFORE, Plaintiff, NATIONAL INTERSTATE INSURANCE COMPANY, prays that this Honorable Court enter a declaratory judgement in finding that:

a. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §22.01, Plaintiff, NATIONAL INTERSTATE, is entitled to a judicial determination concerning the scope and nature of its rights and defenses to coverage under its policy issued to FEDERATED with regard to its duties to defend and indemnify LEAR. NATIONAL INTERSTATE is entitled to a declaration and judgment stating that, to the extent liability is apportioned to LEAR for its independent acts or omissions of negligence or through its alleged agency relationship with MARQUEZ in the underlying DEGROOT and/or NICKCEVICH LAWSUITS, that NATIONAL INTERSTATE does not have a duty to indemnify LEAR for any degree of fault attributed to it.

b. NATIONAL INTERSTATE is also entitled to a declaration and judgment stating that, according to Michigan Statute 79.21 pertaining to motor carrier transportation contracts, that LEAR'S contractual claim for indemnification is void to the extent LEAR seeks indemnification for its own negligence, whether vicarious or through its independent acts.

c. The Court shall further grant other relief as it deems just and proper under the circumstances.

Respectfully submitted,

NATIONAL INTERSTATE INSURANCE COMPANY, Plaintiff

By: */s/ Jason Orleans*
One of Its Attorneys

Jason Orleans (ARDC #6258048)
jorleans@ocnlaw.com
ORLEANS CANTY NOVY, LLC
65 E. Wacker Place, Suite 1220
Chicago, IL 60085
Telephone: (847) 625-8200
Facsimile: (847) 625-8262